IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Mother Chef, individually and on behalf of her minor child, Daughter Chef** (Pseudonyms) c/o The Chandra Law Firm LLC The Chandra Law Building 1265 W. 6th Street, Suite 400 Cleveland, OH 44113-1326 <br><br> Plaintiffs, <br><br> v. <br><br> **Ursuline High School** 750 Wick Avenue Youngstown, Ohio 44505 <br><br> **Margaret Damore** Assistant Principal, Ursuline High School 6097 Herons Circle Austintown, Ohio 44515 <br><br> **John DeSantis** Athletic Director & Assistant Football Coach, Ursuline High School 6123 Celesta Place, Poland, Ohio 44514 <br><br> **Catholic Diocese of Youngstown** c/o Bishop David Bonnar 144 West Wood Street Youngstown, Ohio 44503 <br><br> and <br><br> **Ursuline Player-6 (pseudonym),** minor child, individually; and **[FNU] Harris & [FNU] Harris** Parent(s) of Ursuline Player-6, Individually and on behalf of minor child | Case No. \_\_\_\_\_-CV-_____ <br><br> Judge _____ <br><br> Magistrate _____ <br><br> **COMPLAINT WITH JURY DEMAND** |

| [ADDRESS UNKNOWN]  Defendants. | |

| **COMPLAINT WITH JURY DEMAND** |

## NATURE OF ACTION

1.      This is a federal civil-rights action brought by a female Ursuline High School student and her family against a high school, its officials and coach, and a football player and his parents. It alleges violations of Title IX of the Education Amendment, as codified under 20 U.S.C. §§ 1681, *et seq.* It includes supplemental claims for Ohio legal violations, including statutes establishing civil liability for criminal acts like felonious assault, assault, failure to report abuse; aggravated menacing; menacing; and menacing by stalking. And includes other state-law civil claims for failure to report abuse; negligence; negligent supervision; negligent training, supervision, discipline, hiring, and retention; assault; battery; and negligent infliction of emotional distress.

2.      Ursuline High School is a Catholic high school within the Diocese of Youngstown. Rather than act in accordance with its stated values and motto "*Soli Deo Gloria*" (Latin for "*Glory to God alone*"), Ursuline and at least two of its administrators, a coach, and student—consistent with Ursuline's *modus operandi*—opted to violate those values and acted solely for the glory of its football team alone.

3.      Beginning in June 2023, Defendant Player-6—a six-foot-tall, star Ursuline High School football player—began sexually harassing fellow student Daughter Chef, asking this petite, under five-foot-tall freshman for sex and nude photos.

4.      Uninterested, and still childlike in her growth stage, Daughter refused Player-6's overtures.

5.      Unable to accept her rejection, Player-6's bullying and harassment escalated into a physical attack at school, causing Daughter serious physical injuries, photographically depicted below.

6.      Despite Mother Chef and Daughter Chef reporting the attack that day, Defendant Assistant Principal Margaret Damore—on Defendant Ursuline High School behalf—"strongly advise[d]" them **not** to report the attack to police and falsely assured Mother the school would handle the matter. Both Defendant Damore and Defendant Athletic Director John DeSantis, after learning about the attack and injury, failed to report the matter to children's services or law enforcement—as required by law. By Ohio criminal statute, they are mandated reporters.

7.      For the next *two years*, even after Defendant Player-6 continued to harass, stalk, menace, ogle, and intimidate Daughter, these Ursuline Defendants took no action to protect Daughter. Their failures continued even after Daughter's elder brother—an Ursuline graduate once close to DeSantis—voiced frustration and disappointment about Ursuline officials' persistent failures to protect his little sister, and pressed DeSantis to act.

8.      The Ursuline Defendants' intentional failures persisted even after Daughter herself *repeatedly* reported to school officials Defendant Player-6's ongoing predatory behavior.

9.      The Ursuline Defendants' failures weren't just negligent. They were reckless and intentional, because they sought to protect their venerated star football player—at any cost.

10.     And they just didn't care about Daughter. What mattered was the false idol of football.

11.     Mother had to sell her home and move so she could transfer Daughter to another school and protect her child.

12. Ursuline's culture of ignoring violent assaults by its football players has existed for many years—due, in part, to the school's negligent and reckless hiring, training, supervision, and retention of administrators, coaches, and teachers; and the School's willingness to turn a blind eye to the physical victimization of students it is entrusted to protect—all because the School elevates the glory of the football team above basic humanity and decency.

13. Victims, both named and unnamed, have endured permanent and lasting harm, degradation, humiliation, intimidation, and retaliation. Ursuline and its administrators could and should have prevented all of this.

14. Now, because of the actions detailed in this Complaint, Defendants must be held accountable.

PARTIES

15. Plaintiff Mother Chef ("Mother") is the mother of the victim, Daughter Chef. They both reside in Trumbull County, Ohio. She is filing suit on behalf of her minor daughter.

16. Plaintiff Daughter Chef ("Daughter"), a minor at the time of filing, was a freshman and sophomore at Ursuline, but has since transferred to another high school. She resides with Mother in Trumbull County, Ohio. When the sexual harassment and violence Defendant Player-6 perpetrated against her starting when she was a freshman happened, she was childlike and still playing with baby dolls. The events described below robbed her of her innocence.

17. Defendant Ursuline High School ("Ursuline") is a Catholic school under the Catholic Diocese of Youngstown ("Diocese"). Ursuline (with the Diocese's approval) is responsible for its employee's hiring, retention, training, supervision, and termination. That includes its administrators, coaches, and teachers. Father Richard Murphy is Ursuline's president. Ursuline is in Mahoning County, Ohio. At times relevant, Ursuline received and receives federal funds.

18.     Defendant Margaret Damore is Ursuline's assistant principal. She resides in Mahoning County, Ohio.

19.     Defendant John DeSantis is Ursuline's athletic director, teacher, and assistant football coach. He resides in Mahoning County, Ohio.

20.     Defendant Catholic Diocese of Youngstown ("Diocese") is led by the Bishop, currently Bishop David Bonnar, who owns the Diocesan property and is the final decisionmaker for the Diocese and all entities within it, including Ursuline. The Diocese is headquartered in Mahoning County, Ohio. The Diocese is responsible for the negligent training, supervision, discipline, hiring, and retention of Defendants Damore and Desantis.

21.     Defendant Ursuline Player-6 ("Player-6"), a minor, is an Ursuline junior football player. His address is unknown. Despite reasonable and diligent efforts, Plaintiffs could not discover Player-6's address. After identifying Player-6's address, Plaintiffs intend to amend this Complaint. Plaintiffs reserve the right to amend this paragraph pending full discovery.

22.     Defendants [FNU] Harris and [FNU] Harris are Player-6's parents, whose exact identities are unknown, but whose involvement Plaintiffs anticipate. Despite reasonable and diligent efforts, Plaintiffs could not discover [FNU] Harris and [FNU] Harris's names and identities. Upon identification of [FNU] Harris and [FNU] Harris, Plaintiffs intend to amend this Complaint. Plaintiffs reserve the right to amend this paragraph pending discovery.

## OTHER NON-PARTY INDIVIDUALS

23.     Roy Schmidt is an Ursuline teacher and head girls' soccer coach.

24.     Louise Kotel is an Ursuline guidance counselor.

## INCORPORATION BY REFERENCE

25.     Plaintiffs incorporate by reference the Complaint captioned *King, et al., v. Ursuline High*

*Sch., et al.*, filed in the Northern District of Ohio, Eastern District, Case No. 4:25-cv-01822 ("Ursuline-hazing Complaint"), and all its successor complaints. The current operative complaint is filed concurrently with and incorporated as **Ex. 1**.

26.     Defendants Ursuline High School, Assistant Principal Margaret Damore, and the Diocese are also named defendants in the Ursuline-hazing Complaint.

27.     Defendant John DeSantis, while not a named defendant in the Ursuline-hazing Complaint, is referenced in it.

28.     Defendant Player-6 is not a named defendant in the Ursuline-hazing Complaint; but Player-6 is referenced in the Ursuline-hazing Complaint for hazing, assaulting, and abusing a fellow Ursuline football player.

## JURISDICTION AND VENUE

29.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201, for federal claims under Title IX of the Education Amendment, as codified under 20 U.S.C. §§ 1681, *et seq.*, which provide for attorney and expert fees. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

30.     This Court has personal jurisdiction over the Defendants, who reside in and conduct business in this District.

31.     Venue is proper under 28 U.S.C. § 1391, because the substantial events giving rise to several of the claims took place within this District.

FACTUAL BACKGROUND

**In June 2023, Daughter Chef attended summer gym class at Ursuline High School—and Ursuline football Player-6 violently assaulted her.**

32.     In June 2023, Plaintiff Daughter Chef, who had just completed the eighth grade and was about to become a freshman that fall at Defendant Ursuline High School, attended a summer gym class.

33.     Daughter was only 14 years old and stood under five-feet tall, weighing less 120 pounds.

34.     Defendant Player-6, a then-freshman at Ursuline, was also in the same summer gym class.

35.     Player-6 was an Ursuline football player and stood about six-feet tall and weighed about 200 pounds.

36.     Before the start of summer class, Daughter had never met Player-6.

37.     Almost immediately, Player-6 made advances and flirted with Daughter, often trying to touch her hands and arms or putting his arms around her shoulders.

38.     At first, Daughter thought Player-6 was just being playful. When Player-6 added Daughter to his Snapchat friends list, Daughter accepted the friend request.

39.     Player-6 became increasingly aggressive over Snapchat and asked Daughter to send him nude photos and if she wanted to have sex.

40.     Daughter adamantly refused both!

41.     Daughter, innocent and naïve having just graduated from a Catholic grade school, was shocked by Player-6's words and actions.

42.     Daughter, uninterested in Player-6's advances, made her feelings known to him.

43.     But Player-6 became more aggressive on Snapchat and Daughter had to "block" him on Snapchat.

44.     After Daughter rejected Player-6, he became even more aggressive. The once playful touches of the arms and shoulders became forceful and hostile.

45.     As Player-6 became increasingly angry with Daughter's continued rejection, he became more aggressive.

46.     On the last day of class, June 29, during a break, Daughter and some of her friends/classmates were at one end of the turf on Cafaro Field, located across the street from Ursuline.

47.     Daughter and one of her friends were picking up the black turf pellets and playfully sprinkling them on each other's legs.

48.     Player-6 walked over and sat across from Daughter.

49.     Player-6 tried to flirt with Daughter and tried to put the pellets on Daughter's legs. Daughter told Player-6 to stop, but he kept doing it. And she kept telling him to stop.

50.     Another of Daughter's friends jokingly sprinkled pellets in her hair, causing Daughter to turn toward her friend and say, "Stop."

51.     Player-6 picked up a handful of black pellets from the turf and threw them at Daughter's face hitting her.

52.     Daughter told Player-6 to stop, but he said "No" and continued to forcibly throw the pellets hitting Daughter in the face.

53.     Daughter again told Player-6 to stop and that he was hurting her.

54.     When Player-6 continued to throw the pellets at her, Daughter picked up some pellets and threw them back at Player-6.

55.     Daughter said, "See, you don't like when it happens to you, do you?"

56.     Daughter tried to get up, but Player-6 grabbed her ankle to prevent her from leaving.

57.     Daughter kicked away Player-6's hand and started to run away in fear.

58.     Player-6 became enraged at Daughter and said, "Now I'm going to beat her ass!"

59.     As Player-6 chased after Daughter, he again yelled, "Now I'm going to beat her ass!"

60.     Player-6 quickly caught up to Daughter, grabbed her by the waist, picked up her off the ground, and, as Daughter struggled to break free, he dropped her on her back.

61.     Player-6 picked up Daughter again and threw her over his shoulders.

62.     Daughter cried hysterically and screamed, "Someone help me!" and "Help!" multiple times. Daughter even pleaded with Player-6 to put her down.

63.     But he refused.

64.     Player-6 carried Daughter toward the concrete and, as Daughter struggled to get away, he dropped her on her face and stomach on the turf.

65.     Daughter kept screaming both in pain and for help.

66.     No Ursuline teachers came to her rescue.

67.     Player-6 grabbed Daughter's ankles, flipped her on her back, and dragged her across the turf yelling, "I'm going to give you turf burn real bad."

68.     Player-6 dragged Daughter for about 30 feet across the turf, while he continued yelling about giving Daughter "turf burn."

69.     Daughter cried throughout the attack.

70.     Throughout the vicious attack, Player-6 laughed sadistically.

71.     Finally, another Ursuline student yelled at Player-6 to stop and he let go.

72.     Crying, daughter ran over to a group of girl-students and asked them to look at her back.

73.     Daughter was in excruciating pain from the burns on her back. The stinging pain was exacerbated because, due to the summer heat and it being gym class, Daughter was sweating, and the sweat was getting into the open wounds.

74.     The turf pellets had also embedded into the open wounds contributing to Daughter's pain.

75.     A junior female looked at Daughter's back and said, "This is really bad" and that they had to go to the bathroom.

76.     Daughter and the junior went to the gym teacher, Roy Schmidt, and told him that Player-6 had dragged her across the turf and showed him the turf burns on her back.

77.     Schmidt is also Ursuline's girls' soccer coach.

78.     Daughter asked Schmidt if she could go to the restroom, which he permitted. Schmidt said, "Yeah, you can go to the bathroom and get that cleaned up."

79.     As Daughter and the junior were on the way to the restroom, Daughter saw Defendant John DeSantis, who is Ursuline's athletic director and an assistant football coach responsible for Player-6.

80.     DeSantis was grilling hot dogs for the last-day-of-summer-school picnic.

81.     DeSantis asked what happened and Daughter told him that they just gotten "rough" with her.

82.     DeSantis, with no interest or sympathy, just said "Okay," and told her to go to the bathroom. He went back to grilling the hot dogs.

**Daughter Chef was seriously injured.**

83.     When Daughter got to the bathroom and the junior tried to wash off the pellets and turf from Daughter's back. The junior asked if Daughter wanted her to take photos of her back to show her mother stating, "This is really bad."

84.     At 11:00 AM, the junior photographed Daughter's back and Daughter texted it to Mother:



85.     Daughter, concerned about what her Mother would do if she told her the extent of what happened, and not wanting to go into details, texted Mother she "got dragged."

86.     Daughter was afraid of Player-6 and felt he would retaliate against her if she told anyone what happened. She did not want him to physically abuse again.

87.     Daughter did not call Mother while she was in the bathroom because technically, she wasn't allowed to use a cellphone to make a call in class.

88.     Mother knew from the photo that the injuries were not from gym class and questioned Daughter about what really happened. But Daughter didn't want to go into details.

89.     When Mother received Daughter's texts, she immediately completed her work, left home and headed to Ursuline.

90.     After cleaning herself up, Daughter returned to the gym class and waited for any Ursuline administrator or teacher to come talk to her.

91.     But no one from Ursuline came to check on Daughter or talk to her about the attack.

92.     Player-6 was still present at the class.

93.     Toward the end of class, there was a water-balloon fight on Ursuline's grass field, but anyone who didn't want to participate was permitted to stay in the parking lot.

94.     Daughter and another student-friend stood in the parking lot.

95.     Player-6 walked over and tried to throw water on Daughter.

96.     The student-friend yelled at Player-6, "You did this to her! What the fuck is wrong with you?"

97.     And Player-6 responded, "*Yeah, and I'd do it again.*"

98.     Mother arrived at Ursuline about 11:59 AM as the gym class was ending.

**Mother and Daughter went to the office and reported Defendant Player-6's violent attack to Defendants Assistant Principal Margaret Damore and Athletic Director John DeSantis.**

99.     Mother knew that Daughter's injuries were not from gym class.

100.    Daughter broke down crying and told Mother what happened in detail.

101.    Mother took Daughter directly to Ursuline's main office and asked to speak with the principal.

102.    As they were waiting, DeSantis entered the office.

103.    Mother told him, "I'm hot about this. This shouldn't have happened. No boy should be touching a girl like this."

104.    He didn't respond.

105.    Defendant-Ursuline Assistant Principal Margaret Damore came out and escorted Mother, Daughter, and DeSantis to her office.

106.    Daughter tried to explain what happened going back to the start of class with Player-6, his sexual Snapchat messages, and his increasingly aggressive behavior, leading up to the attack.

107.    Despite Daughter reporting sexual harassment, Damore responded coldly, "I'm not interested in what happened before" and that "I only want to hear what happened today."

108.    Daughter explained in detail as much as she could about the attack, but Damore was clearly impatient and hurried to end the meeting.

109.    Sensing Damore's disinterest in what happened and attempts to downplay the violent attack, Mother finally had Daughter lift her shirt to expose the injuries to her back.

110.    Upon seeing Daughter's injuries, Damore, unsympathetically, tried to blame Daughter for not telling anyone what happened "immediately."

111.    Upon seeing Daughter's injuries, DeSantis excused himself from the meeting.

112.    Mother explained that Daughter *did* "immediately" inform the gym teacher Roy Schmidt about the attack—yet Schmidt did nothing.

113.    Mother also explained that Daughter informed DeSantis on her way to bathroom—yet DeSantis, too, did nothing.

114.    Damore stated that she would "handle it."

115.    Mother responded, "This is a physical assault on my daughter. No man should be touching a girl, and this kid should not be at Ursuline High School."

116.    Damore's indifference and lack of sympathy became even more evident and her demeanor became even more dismissive.

117.    Mother demanded that Player-6 be disciplined and further demanded that Player-6 not be in any classes with Daughter and have no contact with Daughter.

118.    Damore promised Mother and Daughter that Player-6 would be in no classes with Daughter and would have no contact with her during the school day.

119.    Mother told Damore that she wanted to file a police report—because Player-6's attack was a crime.

120.    Damore pleaded with Mother and convinced Mother not to file a police report.

121.    Damore insisted that the attack be handled "in-house" and said, "I strongly advise you **not** to file a police report."

122.    Damore said it wasn't necessary to involve law-enforcement authorities and that she wasn't going to contact them.

123.    When Mother insisted that the school must act, Damore claimed there was "nothing" that could be done at the time because it was summer and summer classes had ended.

124.    Daughter pointed out that Player-6 was a football player practicing that summer.

125. Damore said, "I will see what I can do"—and then did … *nothing*.

126. Damore assured Mother that she would address Player-6's conduct on the first day of school.

127. Other Ursuline students told Daughter that Player-6 was at the football team's summer practices and had not been disciplined.

128. Neither Damore, nor DeSantis, reported the criminal attack to children services or law enforcement—even though they are both mandatory reporters and are required to report it under Ohio Rev. Code § 2151.421.

129. Neither children services nor law enforcement ever contacted Mother.

130. No one from Ursuline contacted Mother or Daughter to inform them that Player-6 was disciplined.

131. Based on information and belief, Defendants never disciplined Player-6 for the attack on Daughter. He played the entire football season.

**For weeks after Player-6's attack, Daughter Chef suffered in extreme pain.**

132. Upon returning home, Daughter was in excruciating pain. Mother had to carefully remove the turf and pellets, which had been ground into the wounds on Daughter's back.

133. Daughter couldn't shower the first night because of the pain.

134. The turf burns on Daughter's back were visible for more than a week.

135. The injuries and pain from the turf burn and from being dropped twice on the ground persisted for weeks.

136. Even after the first night, Daughter, for weeks, couldn't shower without pain because of the turf burns. And when she did try to shower, she cried.

137. Because of the injuries, Daughter, for weeks, could not sleep or lie down on her back without pain.

138. Daughter could not wear a shirt without pain for weeks because of the turf burn.

139. Daughter's back pain has been continuous and ongoing.

**Despite Defendant Assistant Principal Margaret Damore's assurance that Player-6 wouldn't be in class with her, when Daughter Chef began school in the fall, Defendant Player-6 *was* in class with her. Ursuline put him there.**

140. When Daughter started class in the fall of 2023, Player-6 was in at least one class with her.

141. The school is large enough that this was completely avoidable.

142. Damore broke her promise to Mother that Player-6 would be in no classes with Daughter.

143. Player-6 continued to harass and make sexual advances toward Daughter.

144. Daughter tried to ignore Player-6, but he persisted.

145. On several days in September 2023, while in class, Player-6 would walk over and sit at Daughter's table with her and her friend.

146. Each time, Daughter immediately got up and sat at another table.

147. Player-6 tried to get Daughter's friends to side with him and told them her wanted to "put on" with her (teenage lingo for "date").

148. Daughter refused.

149. Player-6 even had his friends approach Daughter and tell her that he wanted to "put on" with her.

150. Daughter again refused.

151.    In October 2023, Player-6 tried to turn Daughter's friends against her claiming that she lied about him assaulting her—despite his admitting it previously.

152.    Daughter communicated her concerns and fears to her older brother ("Brother"), who graduated from Ursuline in 2023.

153.    On Friday, October 6, 2023, worried for his sister's safety, Brother texted Athletic Director DeSantis hoping that DeSantis would handle the situation.

154.    Brother wrote:

> You know I am sort of disappointed in u and the school for letting that kid continue to do the same thing with no consequences ☹
>
> After he was told not to come near my sister he is sending his friends over to her to tell her during study hall that he wants "the put on with her." It isn't just her that he's disrespectful to, but that isn't my business to tell. Why is it that you all said there would be consequences and he received nothing. You guys said he wouldn't be in her classes but he's in her study hall STILL bothering her.
>
> Why is it that I'm sitting here at 19 years old telling grown adults they didn't do what they promised to do. If you ask why my sister isn't saying anything it's because she is scared and has little to no faith that anything will be done because the school basically told her to fuck off after getting beat up. Should have pressed charges, put faith in people and it was a mistake.

[*Sic.*]



155. DeSantis did nothing.

156. Worse than that, he falsely claimed he didn't know what Brother was talking about even though Brother told him what was currently happening. In the next breath, he acknowledged that a "situation happened four months ago." DeSantis simply ignored and wished away the report about Player-6's current conduct in study hall.

157. And on top of that, he remonstrated Brother for texting him:

> Not sure what you're talking about. I know that texting me right no [*sic*] is not the way to handle it. It's actually taking advantage of the fact that you have my number. I gave you my number to reach out if you were in need of help.

> The situation you mentioned happened 4 months ago. If there is something going on she needs to report it to me on Monday morning.



6:29

J

JD >

Should have pressed charges, put faith in people and it was a mistake.

Not sure what you're talking about. I know that texting me right no is not the way to handle it. It's actually taking advantage of the fact that you have my number. I gave you my number to reach out if you were in need of help.

10:01 PM

The situation you mentioned happened 4 months ago. If there is something going on she needs to report it to me on Monday morning.

Brushing it under the rug. That's like saying I take advantage of ur email if I were to email u. U didn't listen to anything I just said. Nothing was done about the first incident, nobody cares, now he's continuing. don't need ur help anymore. I am not a student anymore, u tread around me like a stranger. You right I shouldn't have ur number I won't text u anymore. Just do ur job because I know she is gonna say something

10:11 PM

iMessage

158.    Brother responded:

Brushing it under the rug. That's like saying I take advantage of ur email if I were to
email u. U didn't listen to anything I just said. Nothing was done about the first incident,
nobody cares, now he's continuing. don't need ur help anymore. I am not a student
anymore, u tread around me like a stranger. You right I shouldn't have ur number I won't
text u anymore. Just do ur job because I know she is gonna say something

What u don't understand is I'm so upset hearing and watching what has happened to her.

[*Sic.*]

159.    Defendant DeSantis claimed he'd not been "informed of anything since June." He said

this despite Damore having promised she would address Player-6's conduct on the first day of

school. So Defendants never had any intention of addressing Player-6's conduct and protecting

Daughter.





160.  Brother urged DeSantis to act. But it was futile:

> Regardless of whether u were in charge at the time or not. I thought u would be a voice for her. The school filled us with empty promises saying he wouldn't be in her classes or they would handle it. Nah he's in them, and no y'all didn't give him any consequences not even a follow up with my sister or my family. he continues to do the same thing. Not even just to mine but other peoples sisters too.

> If it was ur daughter that got beat up and harassed u would be all over it and u know it.

> U wanna help me one last time. Do it by helping my sister.

[*Sic.*]

161.  Defendant DeSantis, downplaying the situation, said Daughter should report anything to him or the office.

162.  On Tuesday, October 10, 2023, Daughter went to Ursuline guidance counselor Louise Kotel and said she wasn't comfortable with Player-6 being in her class, because of the attack and his continued harassment. Daughter elaborated on Player-6's attack and continued harassment.

163.  Kotel took notes of the conversation. She told Daughter she might tell the principal, but that she would address it with DeSantis.

164.  Later that day, DeSantis spoke to Daughter.

165.  DeSantis was very short with Daughter and showed no interest in obtaining any of the details about what was happening.

166.  DeSantis told Daughter that they were not going to remove Player-6 from her class because she "didn't like him, especially over something that happened more than three months ago" and "it's time to get over it."

167.  DeSantis wanted Daughter to "settle your differences" with Player-6 and become friends. That is, he expected her to befriend her attacker.

168. Daughter tried to explain that it had nothing to do with her liking Player-6; it had to do with Player-6 violently attacking and injuring her, and his continued advancements and harassment.

169. DeSantis retorted that he wasn't removing Player-6 from the class and reiterated, "It's time [for Daughter] to move on." He abruptly ended the meeting.

170. DeSantis, a football coach, showed not the slightest interest in his charge, football Player-6's, ongoing harassment.

171. Ursuline Defendants did not remove Player-6 from Daughter's class.

172. Within days of Daughter's report to Kotel and DeSantis, Player-6 called Daughter a "snitch" and, while staring at Daughter, said to a classmate loud enough for Daughter to hear, "She tried to get me in trouble, but she failed."

173. He was right that Daughter failed in securing any help from Defendants.

174. Player-6 knew that at Ursuline, football is the false idol and that he was above any accountability from administrators and coaches. Even in the class with Daughter, he (and she) got to hear the teacher sing his praises for his performance on the gridiron.

175. Player-6 felt he could do anything to Daughter and get away with it. Because Ursuline administrators made him feel that way.

176. Emboldened, Player-6 persisted in repeatedly walking over to Daughter's table during class and trying to talk to her and her friends.

177. Throughout her freshman year, Player-6 stared at and ogled Daughter when he would see her in class and the school's hallways, causing her more fear and apprehension—especially given Damore and DeSantis's refusal to properly address the situation.

178.    And at other times, when Daughter refused to engage with Player-6, he stared angrily at her, causing her fear and apprehension that he would suddenly and violently attack her again.

179.    At least two to three more times, Daughter reported Player-6's predatory behavior and words to Kotel, who stated there was nothing they could do now, but assured Daughter that Player-6 wouldn't be in class with her next semester.

180.    Fall semester 2024, Daughter (now a sophomore) had another class with Player-6.

181.    That semester, the cycle of Player-6 staring at and ogling Daughter, which she consistently rejected, and then Player-6 glaring at Daughter daily, continued just as it had Daughter's freshman year.

182.    Knowing Defendants were not going to help her, caused Daughter to give up all hope. She stopped going to them.

183.    As a reasonable and foreseeable result, Daughter fell into a state of depression and didn't want to go to school most days. Daughter missed at least 35 days of school her sophomore year and arrived late and early on many other days.

184.    Daughter even became physically sick many days because of the situation.

185.    Daughter often says, "Going to Ursuline was the worst two years of my life. They drained the life out of me."

**Daughter experienced disparate treatment at the hands of Defendants Ursuline High School and Margaret Damore.**

186.    In August–September 2024, Daughter let her friend (Friend-1), another Ursuline student, borrow her cellphone.

187.    Friend-1 used Daughter's cellphone to prank text an Ursuline teacher.

188.     Friend-1 pranked that she got the teacher's number from a dating app and carried on a conversation with him.

189.     Initially, Daughter did not know Friend-1 was using her cellphone to prank text a teacher, but, upon learning, joined in.

190.     Ursuline learned of Daughter and Friend-1's prank soon after school began.

191.     Daughter admitted her involvement in the silliness.

192.     Damore blamed Daughter for letting Friend-1 barrow her cellphone in the first place.

193.     Ursuline and Damore suspended Daughter from school for *five days*—the maximum suspension permitted without Diocesan approval.

194.     Ursuline and Damore also took away Daughter's cellphone privileges at school for the remainder of the year.

195.     Based on information and belief, Friend-1 was only suspended for three days, when she was the one who started the silliness in the first place.

196.     At Ursuline, a girl prank-texting warrants the maximum five-day suspension and loss of cellphone privileges, but violent attacks by a male football player merits no discipline or safety measures.

197.     Shortly after this, another Ursuline teacher called Friend-1 "gay" during class and posted Friend-1's test grade on the board for the entire class to see and belittled Friend-1 in front of the class.

198.     Based on information and belief, Friend-1's parents threatened to sue Ursuline and settled the matter out-of-court.

199.     Friend-1 transferred to another high school.

200.    In April 2024, two of Daughter's best friends were feuding and Daughter learned that Friend-2 and Friend-3 planned to fight in the cafeteria during lunch.

201.    Both the night before and the morning of the planned fight, in the hope of preventing it, Friend-3's mother contacted Ursuline and Damore to alert them.

202.    Ursuline and Damore ignored the warnings.

203.    The morning of the planned fight, Daughter, hoping to prevent the fight between her best friends, asked her substitute teacher during class if she could go to her locker, which the teacher permitted.

204.    Because Friend-2 was in class with Daughter, Daughter didn't want Friend-2 to know Daughter was leaving class to alert the school about the planned fight.

205.    Daughter went to her locker and grabbed a book, but rather than return to class, Daughter went to the guidance counselor's office, which was near her locker.

206.    Daughter told Ursuline guidance counselor Louise Kotel about the planned fight. Kotel assured Daughter that she would alert DeSantis, which she did.

207.    When Daughter returned to class, the substitute teacher gave Daughter a detention for taking too long to return to class.

208.    When Daughter went to lunch, no extra administrations, teachers, resource officers, or anyone were there to prevent the fight.

209.    The fight occurred and Friend-3 was seriously injured, requiring a trip to the emergency room.

210.    The fight was videorecorded and shared with other students and the community at-large.

211.    Ursuline administrators broke up the fight and escorted Friend-2 to the office.

212.    When no Ursuline administrators or teachers came to Friend-3's aid, Daughter's other friends helped Friend-3 to the bathroom, while Daughter retrieved Friend-3's belongings.

213.    As Daughter was going to check on Friend-3, Damore saw her in the hallways and yelled at her for not being at lunch.

214.    Daughter explained why she was not at lunch and Damore yelled at her to "mind your own business."

215.    That afternoon, Damore summoned Daughter to her office.

216.    Damore chastised Daughter for being away from class too long and getting the detention. Daughter protested the detention because her intentions were good—she was trying to stop the planned fight.

217.    Despite Daughter trying to prevent violence, Damore refused to waive the five-point deduction on Daughter's conduct grade but agreed to waive Daughter's serving the detention.

218.    A few weeks later, Damore reneged and forced Daughter to serve the detention.

219.    Daughter met with Damore and questioned why she was forced to serve the detention, but Damore never disciplined Player-6 for his far worse conduct.

220.    Damore sat unresponsive.

221.    Daughter said, "So you're just never going to help me [with Player-6 or anything else]?"

222.    Damore responded simply, "No."

223.    So no good deed goes unpunished at Ursuline.

224.    These were acts of retaliation for Daughter's reports about the all-important football Player-6.

**Because of Defendant Player-6's violent attack and continued harassment, and because Defendants Assistant Principal Margaret Damore and Athletic Director John DeSantis's failed to report the matter or act—combined with Defendants Ursuline High School and Assistant Principal Margaret Damore's retaliatory and disparate treatment—Defendant was compelled to transfer schools.**

225.     Daughter fell into another state of depression and continued desire to not return to school because of Defendants.

226.     Mother rightfully feared for her Daughter's safety and well-being if she returned to Ursuline.

227.     So, in August 2025, Mother sold their house—in which the family lived for 28 years—and moved to another school district so Daughter could leave Ursuline and transfer to another high school.

228.     Mother refused to speak to Ursuline about the transfer because Defendants lied to her family so many times.

229.     Mother had the new high school arrange the transfer.

DEFENDANT URSULINE HIGH SCHOOL'S PREFERENTIAL TREATMENT OF ITS FOOTBALL PLAYERS AND DESIRE TO KEEP MISCONDUCT SILENT HAS BEEN ONGOING FOR YEARS.

230.     The Ursuline-hazing Complaint, attached as Ex. 1 and incorporated by reference, is a prime example of Defendants' preferential treatment of its football players and desire to keep silent (or cover up their misconduct). But this behavior isn't isolated to the hazing matter; it has occurred over several years.

231.     In the spring of 2023, after morning weight lifting, an Ursuline student (who has since graduated) witnessed a fight between two Ursuline football players in the locker room.

232.     Word of the fight quickly spread throughout the school and the students openly discussed it during the day.

233.    That afternoon, Athletic Director DeSantis was distracted and visibly upset during class.

234.    After class, the witness-student asked DeSantis, "are you good with everything that happened this morning" with the fight.

235.    DeSantis became immediately defensive and in an angry tone said, "I don't know what you're talking about." He was trying to downplay and silence the matter.

236.    The witness-student said, "You know what I'm talking about," and DeSantis just glared at him and didn't answer.

237.    The witness-student, now fearing retaliation if he continued to discuss the fight, walked away and kept his mouth shut—that is until the Ursuline-hazing Complaint was filed. He then felt safe and justified in reporting the incident.

238.    In another instance, a former Ursuline student, while attending college, witnessed a fight between two players at the college. The former student felt the college's coach unjustly punished the non-aggressor-player over the aggressor, who was the better player.

239.    The former-student spoke to DeSantis, with whom he became friendly with during his time at Ursuline, for insight.

240.    DeSantis responded that "it's the coaches' job to win games" and that "if they don't win games, they're out of a job."

241.    DeSantis continued that "sometimes they have to make tough choices to protect the better players to win games."

242.    All Defendants cared about was football.

**DEFENDANTS CATHOLIC DIOCESE OF YOUNGSTOWN AND URSULINE HIGH SCHOOL FAILED TO TRAIN, SUPERVISE, AND DISCIPLINE DEFENDANTS DAMORE AND DESANTIS ON HOW TO HANDLE STUDENT VIOLENCE AND HARASSMENT (INCLUDING SEXUAL HARASSMENT), PROPERLY REPORT CHILD ABUSE, AND PROTECT STUDENTS—THAT IS, HOW NOT TO TREAT FOOTBALL AND FOOTBALL PLAYERS AS MORE IMPORTANT THAN EVERYTHING**

243.     Defendant Catholic Diocese of Youngstown and Ursuline High School failed to train, supervise, and discipline Defendants Damore and DeSantis about how to properly address and investigate allegations of student

(a)  violence,

(b)  sexual harassment,

(c)  stalking,

(d)  menacing,

(e)  Title IX violations, and

(f)  all the other misconduct described above.

244.     These institutional Defendants also failed to train and supervise Damore and DeSantis on fulfilling their mandatory duties to report such misconduct and abuse to law enforcement or children services.

245.     And despite receiving federal funding, Defendant Ursuline High School had no Title IX coordinator. Defendant Catholic Diocese of Youngstown, which oversees the high school, did not ensure it did, or that its administrators like Defendant Damore designated one.

## CLAIMS

Although all claims below for Plaintiff Daughter Chef, are through Mother Chef, Mother Chef's name is omitted for simplicity's sake.

## CLAIM 1
## VIOLATION OF TITLE IX OF THE CIVIL RIGHTS ACT
## (EDUCATION AMENDMENTS OF 1972), 20 U.S.C. § 1681 *ET SEQ.*

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT URSULINE HIGH SCHOOL)

246.    Plaintiffs incorporate all previous allegations.

247.    Ursuline High School, as a recipient of federal funding, is subject to Title IX, which prohibits discrimination based on sex in educational programs and activities, as well as retaliation for engaging in protected activity complaining of discrimination. 20 U.S.C. §§ 1681 *et seq.*

248.    Religious schools that receive federal funding are only excluded from Title IX's requirements "if the application of [the requirements] would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3).

249.    These religious exemptions are commonly known to include the exclusion from sports teams based on gender identity, the ability to expel pregnant students, and to have policies denying LGBTQ+ rights.

250.    Ursuline has not requested Title IX–exemption regarding the sexual-harassment and assault of students on the basis that preventing these assaults would conflict with its religious tenets.

251.    Nor would it—unless it wants people to believe that Catholic teaching embraces sexual harassment and warmth toward male-on-female physical violence.

252.    The sexual harassment Daughter Chef endured from football Player-6 was severe, pervasive, objectively offensive, and deprived her of access to educational opportunities or benefits.

253.  Ursuline, through its administrators, including Defendants Damore and DeSantis, had actual knowledge of the severe, pervasive, and objectively offensive harassment Daughter suffered.

254.  Despite this knowledge, Ursuline maintained a policy and practice of responding with deliberate indifference to misconduct by football players, including Player-6. This habit included the hazing detailed in the Ursuline-hazing Complaint.

255.  Ursuline's deliberate indifference is further evidenced by its failure to train Damore and DeSantis on recognizing and preventing sexual harassment and violence.

256.  Under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), Ursuline created, tolerated, and subjected Daughter Chef to a hostile educational environment because she was treated disparately based on her gender; suffered sexual harassment, assault, and other harassment, and treated her disparately in discipline.

257.  And Ursuline lacked adequate policies, training, and procedures and deliberately failed to take appropriate preventive or remedial measures.

258.  Because of Ursuline's discriminatory policy and practice, Daughter was denied equal access to the School's educational opportunities, forced to endure a hostile environment, and ultimately forced to transfer schools to escape the harassment and retaliation.

259.  On top of all that, Ursuline assistant principal Defendant Damore retaliated against Daughter for her protected activity—her reports and opposition to persistent sexually motivated violence, sex discrimination, and sexual harassment by Player-6—by punishing Daughter with disparate treatment detailed above, forcing Daughter to transfer from Ursuline.

260.    As a direct and proximate result of Ursuline's failures, Daughter suffered and will continue to suffer economic and non-economic damages including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

### CLAIM 2
### CIVIL LIABILITY FOR (FAILURE TO) REPORTING CHILD ABUSE UNDER OHIO REV. CODE § 2151.421

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL, MARGARET DAMORE, AND JOHN DESANTIS)

261.    Plaintiffs incorporate all previous allegations.

262.    Under the relevant part of Ohio Rev. Code § 2151.421(A)(1)(a):

No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age… has suffered or faces a threat of suffering any physical or mental wound, injury… or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. Except as otherwise provided in this division or section 5120.173 of the Revised Code, the person making the report shall make it to the public children services agency or a peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred. If the person making the report is a peace officer, the officer shall make it to the public children services agency in the county in which the child resides or in which the abuse or neglect is occurring or has occurred. In the circumstances described in section 5120.173 of the Revised Code, the person making the report shall make it to the entity specified in that section.

263.    Under the relevant part of Ohio Rev. Code § 2151.421(B), "Division (A)(1)(a) of this section applies to any person who is [a]… school teacher; school employee; school authority…."

264.    Under the relevant part of Ohio Rev. Code § 2151.421(M):

Whoever violates division (A) of this section is liable for compensatory and exemplary damages to the child who would have been the subject of the report that was not made. A person who brings a civil action or proceeding pursuant to this division against a person who is alleged to have violated division (A)(1) of this section may use in the action or proceeding reports of other incidents of known or suspected abuse or neglect, provided that any information in a report that would identify the child who is the subject of the report or the maker of the report, if the maker is not the defendant or an agent or

employee of the defendant, has been redacted.

265.     Defendants Ursuline High School, Damore, and DeSantis, acting in professional and official capacities, failed to report Player-6's attack on Daughter.

266.     Defendants Damore and DeSantis were agents and employees of Defendant Ursuline High School acting on its behalf and within the scope of their office or employment. Defendant Ursuline is vicariously liable.

267.     As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

268.     Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 3
### CIVIL LIABILITY FOR CRIMINAL ACTS (REPORTING CHILD ABUSE) UNDER OHIO REV. CODE §§ 2307.60 AND 2151.421

#### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL, MARGARET DAMORE, AND JOHN DESANTIS)

269.     Plaintiffs incorporate all previous allegations.

270.     Under the relevant part of Ohio Rev. Code § 2151.421(A)(1)(a):

No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age… has suffered or faces a threat of suffering any physical or mental wound, injury… or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division. Except as otherwise provided in this division or section 5120.173 of the Revised Code, the person making the report shall make it to the public children services agency or a peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred. If the person making the report is a peace officer, the officer shall make it to the public children services agency in the county in which the child resides or in which the abuse or neglect is occurring or has occurred. In the circumstances described in section 5120.173 of the Revised Code, the person making the report shall make it to the entity specified in that section.

271.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2151.421(A)(1) are criminal acts, indeed misdemeanors, under § 2151.99(C).

272.     Defendants Ursuline High School, Damore, and DeSantis, acting in professional and official capacities, failed to report Player-6's attack on Daughter.

273.     The named Defendants are culpable as principal offenders, complicitors, and/or conspirators for the criminal act and are civilly liable.

274.     The conduct complained of above constitutes criminal acts by Defendants Damore and DeSantis individually and through personal accountability for organizational conduct under Ohio Rev. Code § 2901.24, and, by other Defendants, through vicarious and organizational criminal liability under Ohio Rev. Code § 2901.23.

275.     Defendants Damore and DeSantis were agents and employees of Defendant Ursuline High School acting on its behalf and within the scope of their office or employment.

276.   Acting with the kind of culpability otherwise required for the commission of the offense, its commission was also authorized, requested, commanded, and tolerated by Defendant Ursuline High School's administration acting on behalf of the organization and within the scope of the administrator's office or employment.

277.   Defendants Damore and DeSantis were agents and employees of Defendant Ursuline High School as defined in Ohio Rev. Code § 2901.24 and acted with the kind of culpability required for the commission of the offense. At least one of the following apply:

(a) In the name of the organization or on its behalf, they engaged in conduct constituting the offense; and

(b) They had the primary responsibility to discharge a duty imposed on the organization by law—namely the duty to protect the students whose safety was entrusted to them—and did not discharge that duty.

278.   As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

279.   Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 4
### OHIO COMMON-LAW NEGLIGENCE AND RECKLESSNESS

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL, MARGARET DAMORE, AND JOHN DESANTIS)

280.   Plaintiffs incorporate all previous allegations.

281.    The named Defendants failed to exercise the care that a reasonably prudent person would exercise in a similar situation, resulting in injury.

282.    Defendants Damore and DeSantis were agents and employees of Defendant Ursuline High School acting on its behalf and within the scope of their office or employment. Ursuline High School is vicariously liable.

283.    As a school and school officials, named Defendants owed a duty of care owed to Daughter, who was entrusted to their care at school.

284.    They breached that duty.

285.    As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

286.    Defendants' acts were in conscious disregard for Daughter's rights, malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 5
### OHIO COMMON-LAW NEGLIGENT SUPERVISION AND RECKLESS SUPERVISION

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL, MARGARET DAMORE, AND JOHN DESANTIS)

287.    Plaintiffs incorporate all previous allegations.

288.    Defendants had a duty to provide reasonable supervision of students.

289.    The named Defendants left Player-6 and Daughter unsupervised, leading to her injuries.

290.    The school ignoring repeated complaints of violence, bullying, stalking, predatory behavior, and harassment.

291.     The named Defendants failed to meet the standard of reasonable and prudent educators in supervising the students.

292.     Defendants Damore and DeSantis were agents and employees of Defendant Ursuline High School acting on its behalf and within the scope of their office or employment. Ursuline High School is vicariously liable.

293.     As a school and school officials, they owed a duty of care owed to Daughter, who was entrusted to their care at school.

294.     They breached that duty.

295.     As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

296.     Defendants' acts were in conscious disregard for Daughter's rights, malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 6
### NEGLIGENT AND RECKLESS TRAINING, SUPERVISION, DISCIPLINE, STAFFING, HIRING, AND RETENTION UNDER OHIO LAW

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL AND THE CATHOLIC DIOCESE OF YOUNGSTOWN)

297.     Plaintiffs incorporate all previous allegations.

298.     The named Defendants failed to exercise due care and acted in both a negligent and reckless manner in training, supervising, disciplining, staffing, hiring, and retaining the individual Defendants—especially Defendants Damore and DeSantis.

299.    The named Defendants failed to train, supervise, and discipline Defendants Damore and DeSantis about how to properly address and investigate allegations of violence, sexual harassment, stalking, menacing, and all the conduct described above.

300.    The named Defendants also failed to discipline and hold Defendants Damore and DeSantis accountable for failing to fulfill their mandatory duties to report such misconduct to law enforcement or children services.

301.    The named Defendants failed to train, supervise, and discipline Defendants Damore and DeSantis about caring about such allegations more than football.

302.    Defendants Ursuline and the Diocese's negligent and reckless conduct in this regard proximately caused Daughter's injuries.

303.    As a direct and proximate result of these actions, Daughter, has suffered and will continue to suffer damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

304.    Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 7
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER OHIO LAW

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS URSULINE HIGH SCHOOL, MARGARET DAMORE, AND JOHN DESANTIS)

305.    Plaintiffs incorporate all previous allegations.

306.    Defendants had duties to, and breached those duties, acting negligently and causing harm to Daughter.

307.    As a direct and proximate result of Defendants' negligence, Daughter suffered severe emotional distress and physical harm and injury. The distress was severe enough to disrupt her daily life.

308.    The harm caused by Defendants' negligence and recklessness was reasonably foreseeable by Defendants at all relevant times.

309.    As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

310.    Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 8
### CIVIL LIABILITY OF PARENTS FOR WILLFUL AND MALICIOUS ASSAULTS BY THEIR CHILDREN UNDER OHIO REV. CODE § 3109.10

### (PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANTS PARENTS OF PLAYER-6)

311.    Plaintiffs incorporate all previous allegations.

312.    Under Ohio Rev. Code § 3109.10, in relevant part:

> Any person is entitled to maintain an action to recover compensatory damages in a civil action, in an amount not to exceed ten thousand dollars and costs of suit in a court of competent jurisdiction, from the parent of a child under the age of eighteen if the child willfully and maliciously assaults the person by a means or force likely to produce great bodily harm.

313.    Player-6 willfully and maliciously assaulted Daughter by means or force likely to produce great bodily harm.

314. Daughter suffered, or was assaulted in such a manner as to likely produce, great bodily injury.

315. The named-Defendant Parents are liable for the actions of their named children.

316. As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendants are liable, including, but not limited to, pain and suffering, reputational harm, and emotional distress.

317. Defendants' acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 9
### CIVIL LIABILITY FOR CRIMINAL ACTS (FELONIOUS ASSAULT) UNDER OHIO REV. CODE §§ 2307.60 AND 2903.11

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

318. Plaintiffs incorporate all previous allegations.

319. Under Ohio Rev. Code § 2903.11(A)(1), "No person shall knowingly… Cause serious physical harm to another…"

320. Under Ohio Rev. Code § 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

321.     Under the relevant part of Ohio Rev. Code § 2901.01(A)(5):

"Serious physical harm to person" means any of the following… (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

322.     Daughter's injuries constitute serious physical harm.

323.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2903.11(A)(1) are criminal acts, indeed felonies, under § 2903.11(D)(1)(a).

324.     Defendant Player-1 knowingly caused serious physical harm to Daughter.

325.     The named Defendant is culpable as a principal offender, complicitor, and/or conspirator for the criminal act and are civilly liable.

326.     As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendant is liable, including, but not limited to, pain and suffering, reputational harm, and emotional distress.

327.     Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 10
### CIVIL LIABILITY FOR CRIMINAL ACTS (ASSAULT) UNDER OHIO REV. CODE §§ 2307.60 AND 2903.11

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

328.     Plaintiffs incorporate all previous allegations.

329.     Under the relevant part of Ohio Rev. Code § 2903.13(A), "No person shall knowingly cause or attempt to cause physical harm to another…" Under the relevant part of subsection (B), "No person shall recklessly cause serious physical harm to another…"

330.     Under Ohio Rev. Code § 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

331.     Under Ohio Rev. Code § 2901.22(C), "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

332.     Under Ohio Rev. Code § 2901.01(A)(3), "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

333.     Under the relevant part of Ohio Rev. Code § 2901.01(A)(5):

"Serious physical harm to person" means any of the following… (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

334.    Daughter's injuries constitute physical harm and serious physical harm.

335.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2903.13 are criminal acts, indeed misdemeanors, under § 2903.13(C)(1).

336.    Defendant Player-1 knowingly caused physical harm to Daughter.

337.    Defendant Player-1 recklessly caused serious physical harm to Daughter.

338.    The named Defendant is culpable as a principal offender, complicitor, and/or conspirator for the criminal act and are civilly liable.

339.    As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendant is liable, including, but not limited to, pain and suffering, reputational harm, and emotional distress.

340.    Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 11
### CIVIL LIABILITY FOR CRIMINAL ACTS (AGGRAVATING MENACING) UNDER OHIO REV. CODE §§ 2307.60 AND 2903.21

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

341.    Plaintiffs incorporate all previous allegations.

342.    Under the relevant part of Ohio Rev. Code § 2903.21(A): "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person…." (Cleaned up.)

343.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2903.21 are misdemeanor criminal acts under § 2903.21(B).

344.    Defendant Player-6 committed aggravated menacing against Daughter Chef in all the ways described above.

345.    As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which Defendant Player-6 is liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

346.    Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 12
### CIVIL LIABILITY FOR CRIMINAL ACTS (MENACING) UNDER OHIO REV. CODE §§ 2307.60 AND 2903.22

**(BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)**

347.    Plaintiffs incorporate all previous allegations.

348.    Under the relevant part of Ohio Rev. Code § 2903.22(A)(1): "No person shall knowingly cause another to believe that the offender will cause physical harm to the person…." (Cleaned up.)

349.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2903.21 are misdemeanor criminal acts under § 2903.22(B).

350. Defendant Player-6 committed menacing against Daughter Chef in all the ways described above.

351. As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which Defendant Player-6 is liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

352. Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 13
### CIVIL LIABILITY FOR CRIMINAL ACTS (MENACING BY STALKING) UNDER OHIO REV. CODE §§ 2307.60 AND 2903.211

#### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

353. Plaintiffs incorporate all previous allegations.

354. Under the relevant part of Ohio Rev. Code § 2903.211(A)(1): "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person…." (Cleaned up.)

355. Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2903.211 where, as here, the victim is a minor or the offender has a history of violence toward the victim, are criminal acts—indeed felonies—under § 2903.211(B)(2)(d)–(e).

356. Defendant Player-6 committed menacing by stalking against Daughter Chef in all the ways described above.

357. As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which Defendant Player-6 is liable, including, but not limited to, pain and suffering, reputational harm, betrayal, and emotional distress.

358. Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 14
## CIVIL ASSAULT UNDER OHIO LAW

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

359. Plaintiffs incorporate all previous allegations.

360. Player-6 willfully threatened or attempted to harm or offensively touch Daughter, which reasonably placed Daughter in fear of such contact; coupled with Player-6 taking a definitive act to do so and having the apparent present ability to do harm or to commit the offensive touching.

361. Player-6 intentionally created the fear of injury.

362. As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendant is liable, including, but not limited to, pain and suffering, reputational harm, and emotional distress.

363. Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 15
### CIVIL BATTERY UNDER OHIO LAW

### (BY PLAINTIFF DAUGHTER CHEF AGAINST DEFENDANT PLAYER-6)

364. Plaintiffs incorporate all previous allegations.

365. Player-6 harmfully or offensively touched Daughter.

366. Player-6 unlawfully touched Daughter with the intent of inflicting injury.

367. As a direct and proximate result of these actions, Daughter has suffered and will continue to suffer economic and non-economic damages for which the named Defendant is liable, including, but not limited to, pain and suffering, reputational harm, and emotional distress.

368. Defendant's acts were malicious, in bad faith, performed in a wanton and reckless manner, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### PRAYER FOR RELIEF

For the above reasons, Plaintiff respectfully requests the following relief from the Court:

(a) Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

(b) Enjoin Defendants from retaliating against Mother and Daughter Chef;

(c) Enter judgment in Mother and Daughter Chef's favor on all claims for relief;

(d) Award Mother and Daughter Chef full compensatory damages, economic and non-economic, including, but not limited to, pain and suffering, mental anguish, emotional distress, reputational harm, sense of betrayal, and trauma that they have suffered and are reasonably certain to suffer in the future;

(e) Award Mother and Daughter Chef punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

(f) Award prejudgment and post-judgment interest at the highest lawful rate;

(g) Award Mother and Daughter Chef their reasonable attorney fees, expert fees, and all other costs and expenses of this suit;

(h)     Award all other relief in law or equity to which Mother and Daughter Chef is entitled and that the Court deems equitable, just, or proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues within this complaint.

Dated: September 10, 2025                                    Respectfully submitted,

*/s/ Subodh Chandra*                                        *Per consent*
Subodh Chandra (0069233)                          Martin P. Desmond (0077377)
Alexandra Day Lavelle (0099601)                 Attorney at law
Ethan Dawson (0103801)                              P.O. Box 14052
THE CHANDRA LAW FIRM LLC                      Youngstown, OH 44514
The Chandra Law Building                           330.559.4505 (p)
1265 West 6th Street, Suite 400                    Mpmd4@hotmail.com
Cleveland, Ohio 44113
888.500.5025 Phone                                     *Attorneys for Plaintiffs*
Subodh.Chandra@ChandraLaw.com          *Mother and Daughter Chef*
Alexandra.Lavelle@ChandraLaw.com        *(Pseudonyms)*
Ethan.Dawson@ChandraLaw.com